## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 22 2020, 7:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

A. David Hutson
Hutson Legal
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Terald A. Walthour,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 22, 2020

Court of Appeals Case No.
19A-CR-2019

Appeal from the Clark Circuit Court

The Honorable Steven M. Fleece, Judge Pro Tempore

Trial Court Cause No.
10C01-1708-F1-4

**Bailey, Judge.**

# Case Summary

Terald Walthour ("Walthour") appeals his conviction of attempted murder, as a Level 1 felony,[1] following his entry of a plea agreement, and his sentence therefor.

We affirm.

# Issues

Walthour raises the following two restated issues on appeal:

1. Whether the trial court abused its discretion when it denied his request to withdraw his guilty plea.

2. Whether his sentence is inappropriate in light of the nature of the offense and his character.

# Facts and Procedural History

On August 21, 2017, Walthour attended a party in the backyard of his girlfriend's house. Walthour became angry and violent with his girlfriend and demanded that everyone leave. Corey Baker ("Baker") left the party to go to his car but returned to the backyard to retrieve a cell phone. When Walthour

---

[1] Ind. Code § 35-42-1-1(1); I.C. § 35-41-5-1(a).

saw Baker, Walthour became enraged and shot Baker in the face. As Baker tried to crawl away, Walthour shot him two more times in the legs.

[5] The State charged Walthour with attempted murder, a Level 1 felony. On February 21, 2019, the parties filed a signed plea agreement pursuant to which Walthour agreed to plead guilty to the charge and the sentence was capped at the advisory sentence of thirty years. The plea agreement also stated, "The Defendant agrees that either party may unilaterally withdraw from this plea agreement for any reason before a guilty plea is entered." App. at 143.

[6] At a March 20 change of plea hearing, Walthour withdrew his previous plea of not guilty and "enter[ed] a plea of guilty." *Id.* at 18. In so doing, he admitted the factual basis for the charge. The trial court advised him of the rights he was waiving and confirmed that he was entering the guilty plea knowingly and voluntarily. At the conclusion of the hearing, the trial court took the guilty "plea under advisement." *Id.*

[7] At the April 25 hearing that was scheduled for sentencing, Walthour told the trial court he wanted to "back out of that plea" and take the case to trial pro se. Tr. at 29. Walthour's counsel requested a continuance of the sentencing hearing, and the court granted that request and reset the hearing to May 9 to give Walthour "some time to think about" his request to withdraw his guilty plea and represent himself. *Id.* at 36. At the subsequent May 9 hearing, the trial court granted Walthour's request to proceed pro se, appointed stand by

counsel for Walthour, and scheduled a hearing on his request to withdraw his guilty plea.

[8] At a June 27 hearing, Walthour requested that his counsel be reappointed and the court granted that request. Walthour requested that the hearing be reset to allow him time to file a written motion to withdraw his guilty plea, and the court also granted that request. On July 22, Walthour filed his written motion to withdraw his guilty plea. At the July 25 hearing on that motion, the trial court reviewed the recording of the March 20, 2019, change of plea hearing that had been conducted by a different judge and concluded:

> I found no indication that Mr. Walthour was sleeping through the situation or failing to pay adequate attention or failing to understand the proceedings. Instead, I found that there were a number of really intelligent questions that were asked to clarify certain things. And that the Judge then dealt with that and the defense attorneys dealt with that. I was impressed with Mr. Walthour['s] understanding . . . If I had been convinced that Mr. Walthour was, perhaps, not sharp enough to take it all in or didn't understand it, I'd be inclined to grant this, but my impression from listening to that tape is that Mr. Walthour was sharp enough to understand what he was saying and was not under co-ersion [sic], and has voluntarily entered a plea, which is legitimate and which can stand.

*Id*. at 66-67. The trial court denied Walthour's motion to withdraw his guilty plea.

[9] At Walthour's subsequent August 22 sentencing hearing, the trial court found his criminal history to be an aggravating factor. The court noted that, although

Walthour had a number of offenses in California for which the Probation Department was unable to ascertain the outcomes, the evidence established that he had one prior confirmed misdemeanor conviction and two confirmed felony convictions. The court also noted that Walthour had a pending charge of battery resulting in moderate bodily injury, and he had charges of strangulation, criminal confinement, and battery resulting in moderate bodily injury that had been dismissed on the day of trial. Walthour also had an active warrant out for his arrest in California and had recently violated the conditions of his probation or parole. "[T]aking into account the [prior] convictions … and the plea in the [instant] case," the trial court found there would be aggravating circumstances sufficient to justify the imposition of a higher sentence than the thirty-year advisory cap that was included in the plea agreement. *Id.* at 74. The trial court then sentenced Walthour to a thirty-year executed term in the Indiana Department of Correction, i.e., the maximum sentence allowed under the plea agreement. This appeal ensued.

# Discussion and Decision

## Denial of Motion to Withdraw Guilty Plea

[10] Walthour challenges the trial court's denial of his motion to withdraw his guilty plea. A trial court's ruling on a motion to withdraw a guilty plea "arrives in this court with a presumption in favor of the ruling." *Brightman v. State*, 758 N.E.2d 41, 44 (Ind. 2001). We will reverse the trial court only for an abuse of discretion. *Id.* When we review for an abuse of discretion, we do not reweigh

the evidence. *Brightpoint, Inc. v. Pedersen*, 930 N.E.2d 34, 38 (Ind. Ct. App. 2010), *trans. denied*. "In determining whether a trial court has abused its discretion in denying a motion to withdraw a guilty plea, courts must examine the statements made by the defendant at the guilty plea hearing to decide whether the plea was offered 'freely and knowingly.'" *Jeffries v. State*, 966 N.E.2d 773, 777 (Ind. Ct. App. 2012) (quoting *Brightman*, 758 N.E.2d at 44).

[11]     Walthour first asserts that the trial court's denial of his motion to withdraw from the plea agreement was erroneous because that agreement[2] allowed him to withdraw from it prior to the court's "acceptance" of his guilty plea. Appellant's Br. at 9. However, that is not what the plea agreement said. Rather, it explicitly stated that Walthour could withdraw from the plea agreement "before a guilty plea is *entered* in Court." App. at 143 (emphasis added). As the State points out, "[t]he 'entry' of a guilty plea and the court's subsequent 'acceptance' of that plea are two distinct stages of the plea process." *Turner v. State*, 843 N.E.2d 937, 941 (Ind. Ct. App. 2006). A defendant "enters a plea when he offers it to the court." *Peel v. State*, 951 N.E.2d 269, 271-72 (Ind. Ct. App. 2011). Here, as the Chronological Case Summary notes, Walthour "*enter[ed]* a plea of guilty" at the March 20, 2019, hearing on change of plea. App. at 18 (emphasis added). He did not seek to withdraw that plea, even informally, until the April 25, 2019, hearing. Because Walthour did not seek to

---

[2] The parties do not dispute that the trial court accepted the plea agreement.

withdraw from the plea agreement before he entered his guilty plea, his plea withdrawal was not authorized by the terms of the plea agreement.

[12]     Walthour alternatively contends that the trial court erred when it denied his request to withdraw his guilty plea as permitted under Indiana Code Section 35-35-1-4(b).  Under that statute,

> after a defendant pleads guilty but before a sentence is imposed, a defendant may move to withdraw a plea of guilty.  [I.C. § 35-35-1-4(b).]  The trial court must permit a defendant to withdraw a guilty plea if it is "necessary to correct a manifest injustice."  *Id*.  On the other hand, the motion to withdraw the plea should be denied if the plea's withdrawal would substantially prejudice the State.  *Id*.  In all other cases, the court may grant the defendant's motion to withdraw a guilty plea "for any fair and just reason."  *Id*.

> * * *

> Instances of manifest injustice may include any of the following …: a defendant is denied the effective assistance of counsel, the plea was not entered or ratified by the defendant, the plea was not knowingly and voluntarily made, the prosecutor failed to abide by the terms of the plea agreement, or the plea and judgment of conviction are void or voidable."

*Jeffries*, 966 N.E.2d at 777-78.

[13]     Walthour asserts that the denial of his motion to withdraw his guilty plea was a manifest injustice because he "maintained his innocence and demonstrated that he misunderstood the effect of his 'guilty' plea."  Appellant's Br. at 14.  That is,

he maintains that his plea was "not knowingly and voluntarily made." *Jeffries*, 966 N.E.2d at 778. However, the record does not support that claim. As the trial court found, at the March 20 hearing on change of plea Walthour clearly stated his desire to plead guilty to the charge of attempted murder, and he admitted the underlying facts without hesitation. Tr. at 26-27, 66-67. Walthour asked intelligent questions during the hearing regarding potential sentences, and the trial court concluded that he was sharp enough to understand what he was saying and was not under coercion. Walthour's vague, general claims that he is innocent and "fundamentally misunderstood the nature of his testimony and admissions" do not overcome that evidence. Appellant's Br. at 13. Rather, the statements Walthour made at the guilty plea hearing support the trial court's conclusion that Walthour's plea was knowing and voluntary. *Jeffries*, 966 N.E.2d at 777.

[14] Walthour has failed to prove withdrawal of the guilty plea is necessary to correct a manifest injustice, and we do not discern any other "fair and just reason" to allow withdrawal of the guilty plea. I.C. § 35-35-1-4(b). The trial court did not abuse its discretion when it denied his request to withdraw his guilty plea.

## Inappropriateness of Sentence

[15] Walthour maintains that his sentence is inappropriate in light of the nature of the offense and his character. Article 7, Sections 4 and 6, of the Indiana Constitution authorize independent appellate review and revision of a trial

court's sentencing order. *E.g.*, *Livingston v. State*, 113 N.E.3d 611, 613 (Ind. 2018). This appellate authority is implemented through Indiana Appellate Rule 7(B). *Id.* Revision of a sentence under Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. *See* Ind. Appellate Rule 7(B); *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). We consider not only the aggravators and mitigators found by the trial court, but also any other factors appearing in the record. *Baumholser v. State*, 62 N.E.3d 411, 417 (Ind. Ct. App. 2016), *trans. denied*. It is the defendant's burden to "persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). And the defendant "bears a particularly heavy burden in persuading us that his sentence is inappropriate when the trial court imposes the advisory sentence." *Fernbach v. State*, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011), *trans. denied*.

[16] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the

severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id*. at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[17] We begin by noting that Walthour's thirty-year executed sentence is the advisory sentence for a Level 1 felony, I.C. § 35-50-2-4(b), and the advisory sentence "is the starting point the Legislature selected as appropriate for the crime committed," *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). Moreover, the nature of Walthour's offense was cruel and callous; he not only shot Baker in the face but continued to shoot Baker as he attempted to crawl away. Thus, Walthour's crime was not accompanied by a show of "restraint" or "lack of brutality" on his part. *Stephenson*, 29 N.E.3d at 122.

[18] Nor does Walthour's character support a sentence revision. He has one prior misdemeanor conviction and two prior felony convictions. At the time of sentencing, he had an active warrant for his arrest in California, and he had recently violated the terms of his probation or parole. Walthour's criminal history, in conjunction with the lack of restraint shown by his repeated shooting of an injured victim as he attempted to crawl away, supports the trial court's

conclusion that it could have imposed a sentence above the advisory sentence if not for the cap imposed by the plea agreement. Furthermore, Walthour points to no mitigating evidence, such as substantial virtuous traits or persistent examples of good character, and the trial court found none. *Id*.

[19] We cannot say that Walthour's sentence is inappropriate in light of the nature of his offense and his character.

# Conclusion

[20] The trial court did not abuse its discretion when it denied Walthour's motion to withdraw his guilty plea made after he entered that plea but before sentencing. And we find no reason to revise Walthour's sentence as it is not inappropriate in light of the nature of his offense and his character.

[21] Affirmed.

Kirsch, J., and Mathias, J., concur.